The **WHITEHALL CEMENT MANUFAC-
TURING COMPANY, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 25310.**

United States District Court
E. D. Pennsylvania.
May 26, 1965.

**328**

See also 242 F.Supp. 326.

George Craven, Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiff, Whitehall Cement Mfg. Co.

John B. Leake, Philadelphia, Pa., for Allentown Portland Cement Co.

Drew J. T. O'Keefe, U. S. Atty., Francis R. Crumlish, Asst. U. S. Atty., Philadelphia, Pa., Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Thomas F. Field, Attys., Dept. of Justice, Washington, D. C., for defendant.

GRIM, District Judge.

This case is now before the court for resolution of the issues raised in the respective motions for judgments filed by the taxpayer and the government. The parties are having difficulty in determining the exact amount of the tax payable under the court's initial opinion in this case. See 237 F.Supp. 838.

Taxpayer is an integrated miner-manufacturer of portland cement. The basic problem in this case has been to ascertain what operations and processes in taxpayer's business are to be considered mining, as opposed to manufacturing, for percentage depletion purposes and, secondly, to determine the proper method for excluding from taxpayer's gross income its manufacturing costs and profits. Taxpayer and the government have asked for amplification and clarification respecting the court's view of certain of the issues in this case.

### Treatment to be Accorded Taxpayer's Packaging Operations

■ In the court's initial opinion in this case it was clearly held that the cost of loading and packaging taxpayer's finished portland cement as well as the proportion of profits attributable to such cost are non-mining costs and profits and, consequently, must be excluded from taxpayer's gross income for purposes of determining its depletion basis. The court further approved the so-called "proportionate cost and profits" method of removing this manufacturing income from taxpayer's gross income. However parenthetically the court noted [1] that this method is necessarily only an arbitrary

---

1. Whitehall Cement Mfg. Co. v. United States, 237 F.Supp. 838, 842, n. 6 (E.D.Pa.1965).

means of constructing figures deemed to represent taxpayer's costs and profits on particular mining and manufacturing operations in an integrated business and that if it could be shown that a particular operation in reality resulted in a financial loss to plaintiff no constructive profits should be apportioned to such operation. Plaintiff seized on this comment and in the tax computations accompanying its motion for judgment did not attribute any of its gross profits to the manufacturing operations of packaging its cement in bags since it alleged that the price it charged customers for the bags was less than the actual cost to it of purchasing the bags and filling them with portland cement. However, the government rightly pointed out that plaintiff failed to accord any dollar amount to the good will and operating economics it received as a result of its sale to customers of cement in bags as well as bulk sales. Moreover, it must be noted that this case was submitted to the court under a Stipulation of Facts and Issues whereby the parties agreed that the Stipulation "together with the amended complaint and defendant's answer thereto shall constitute the trial record in this case." There is no basis in this record for a finding that taxpayer's bagging operations actually resulted in a loss to it. Plaintiff in a tax refund suit has the burden of proving the facts necessary to justify the relief sought. It has failed to do so here. Accordingly, the government's contentions on this issue are sustained and it is directed that the cost of plaintiff's bagging operations as well as the proportion of plaintiff's indirect costs attributable to such operations,[2] together with the proportionate profits attributable to such costs must be excluded from taxpayer's depletion basis.

### Treatment to be Accorded Use of Additives purchased by Plaintiff for mixing with its Quarried Cement Rock

In the process of producing portland cement from taxpayer's quarried cement rock, it is necessary to add certain limestone, iron ore and sand to the cement rock. These additives are blended and mixed with the cement rock and the component materials are pulverized and ground to a fine particle size. In the initial opinion in this case, the court referred to these processes generically as "blending" and held that the costs attributable to such "blending" must be considered mining costs.[3] In response to the request of the parties for a more specific finding on this point, I now find and enter as a conclusion of law in this case that the costs (and proportionate profits attributable thereto) of blending, mixing, crushing, grinding and pulverizing of limestone, iron ore and sand with the quarried cement rock prior to the kiln feed point, are to be considered as mining costs and profits.

### Treatment to be Accorded Plaintiff's resale of purchased Mortar Cement

The hopefully final difficulty encountered by the parties in recomputing plaintiff's tax in accordance with the court's decision in this case revolves around the tax treatment to be accorded the income received by plaintiff from the sale to its customers of mortar cement not mined or manufactured by plaintiff, but purchased by it from other producers. The government in its computation has treated this operation just as if it were another post-kiln process involved in the mining-manufacturing of Portland cement, despite the fact that this court found that plaintiff's income from the purchase and resale of mortar

---

2. Allowable indirect costs are those expenses such as office salaries, advertising and sales expenditures which are incurred for the benefit of both the mining and manufacturing phase of taxpayer's integrated business. These indirect costs are allocated between the mining and manufacturing phase of taxpayer's operations in the proportion that the direct processing cost up to the kiln feed stage bear to the direct processing cost after the kiln feed stage. See discussion in court's opinion, 237 F.Supp. 838, at 843, 844.

3. Whitehall Cement Mfg. Co. v. United States, 237 F.Supp. 838, 842 (E.D.Pa. 1965).

cement can and must be isolated from its income from the mining and manufacturing of portland cement.[4]  The cost to plaintiff of purchasing this mortar cement as well as the income produced by its resale are known.  I adhere to my earlier conclusion that no proportion of the cost and profit resulting from plaintiff's portland cement business should be attributable to plaintiff's purchase and resale of mortar cement.

The findings of fact and conclusions of law expressed in the initial opinion of this court, 237 F.Supp. 838, and the subsequent opinion and order denying plaintiff's motion for reargument and reconsideration are reaffirmed.  The statements contained in this opinion shall constitute additional findings of fact and conclusions of law in this case.

---

4.  Whitehall Cement Mfg. Co. v. United States, 237 F.Supp. 838, 844 (E.D.Pa.1965).